UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TOD TRUETTE TUMEY** and **KELLI TUMEY** *Plaintiffs* | § § § § § § § § § | C.A. NO. 4:11-cv-1451 |
| vs. | | |
| **CHASE HOME FINANCE LLC** *Defendant* | | |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

TOD TRUETTE TUMEY and KELLY TUMEY ("Tumeys" or Plaintiffs"), as Plaintiffs is the above entitled action, allege in support of their First Amended Complaint against Chase Home Finance, LLC ("Defendant" or "Chase") the following:

### I. PARTIES

1. Plaintiffs, Tod Truette Tumey and Kelly Tumey, are residents of Houston, Harris County, Texas.

2. Defendant, Chase Home Finance, LLC, is a foreign limited liability company doing business in the state of Texas who can be served with process through its registered agent for service of process C T Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Dallas County, Texas 75201-4234.

### II. JURISDICTION & VENUE

3. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §1332 because the Plaintiffs and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interests and costs.

4. Venue is proper in this Court under 28 U.S.C. §1391(a)(2).

### III. NATURE OF THE ACTION

5. This is a complaint for damages by Plaintiffs wherein they seek a judgment (i) granting actual damages to Plaintiffs in an amount to be determined at trial; (ii) granting exemplary damages to Plaintiffs in an amount to be determined at trial; (iii) granting treble damages to Plaintiffs under the Texas Deceptive Trade Practices Act; (iv) granting statutory minimum damages to Plaintiffs under the Texas Finance Code; (v) awarding Plaintiffs reasonable and necessary attorney's fees plus costs and expenses; and (vi) granting such other and further relief as the Court deems just and proper.

6. All conditions precedent have been performed or have occurred.

### IV. FACTS

7. Tumey is the owner of a homestead located at 8426 N. Hilshire Park Drive, Houston, Harris County, Texas ("the Property"). The Tumeys purchased the Property by executing a promissory note payable to Holland Mortgage Corporation of Houston and dated January 20, 2006 ("the Note") in the amount of Four Hundred Five Thousand and No/100 Dollars ($405,000.00). The Note is secured by a Deed of Trust dated January 20, 2006.

8. Tumey is a self-employed attorney. In 2007 and 2008, Tumey's business suffered an economic downturn caused by two of Tumey's three biggest, and long-term, clients failing to pay monies due and owing to Tumey. As a result, Tumey's income was substantially affected, as was the ability to make payments under the terms of the Note. Tumey was placed in contact with Defendant Chase Home Finance LLC ("Chase"), who had either been assigned the Note or was acting as servicer of the Note. Chase offered to Tumey a "Home Affordable Modification Trial Period Plan" ("the Plan") whereby the amount of monthly payments would be modified as a result of the income reduction being experienced by Tumey. As a result of the hardships, Tumey

decided to enter the Plan. Chase advised Tumey at the time to make no further monthly payments until Tumey was advised of the amount that would be due under the modified plan.

9. Tumey completed the documentation required by Chase to enroll in the Plan and made the payments directed by Chase. Chase was to advise Tumey whether he would be entitled to a Modified Loan Plan. To that end, Tumey would routinely contact Chase to inquire as to whether any additional information or documentation was required by Chase. In addition to the telephone calls, Tumey would provide whatever documentation was requested by Chase.

10. Despite Tumey's compliance with all requirements of the Plan, including all monthly payments, Chase never advised Tumey whether the loan modification had been approved. Instead, and without justification, Chase posted the Property for foreclosure in January of 2010. Realizing the impropriety of such actions, Chase ultimately withdrew the Notice and rescinded its acceleration of the loan maturity.

11. Tumey continued to make the modified payments required by Chase. As the modified September 2010 payment became due, Tumey again contacted Chase to determine whether any additional information or documentation was necessary. At that time, Tumey was advised that Chase would not accept the payment and that the Note had been sent to foreclosure (but that no date had been set) because Tumey had "failed to advance with the program." No explanation was given as to what was meant by "failing to advance the program." Nevertheless, Chase advised that if Tumey re-applied for the Plan by completing and sending in all documentation required to apply for the Plan (essentially all the documentation previously provided by Tumey), as well as provided a certified check for the modified amount, Chase would remove the Property from the foreclosure list. Tumey did as instructed by Chase in early September of 2010.

12. After Tumey completed the requested paperwork again, Tumey's business had rejuvenated enough to allow Tumey to forego the Plan and return to making the payments contemplated by the Note prior to Tumey's application to the Plan. Tumey called Chase to inquire as to how to exit the Plan (though Tumey was never provided a set "Loan Modification" as contemplated by the Plan) and return to paying the Note as initially drafted. Chase advised Tumey to fax in a letter to a certain facsimile number at Chase, and then call to talk about the terms to resolve the unpaid amounts. Tumey called, but was advised by Chase that Chase had, once again, posted the Property for foreclosure and would not stop the foreclosure unless Tumey paid all fees, including attorneys fees. Despite the documentation to the contrary, Chase also denied that Tumey had even been participating in the Plan since 2009. In an effort to amicably resolve the matter, Tumey retained counsel and proposed incorporating any "back payments" into the remaining loan balance and return to the standard monthly payment initially contemplated by the Note. In the alternative, Tumey proposed returning to paying Chase the initial Note amount, as well as an additional $10,000.00 every month until the differences were made. Chase refused each offer and advised that Chase intended to foreclose on November 2, 2010 unless it was provided payment in the amount of almost $40,000.00. Ultimately, and apparently after Chase's foreclosure counsel investigated the facts and the background, Chase once again withdrew the planned foreclosure.

13. On November 8, 2010 after the Tumeys had already sought removal from the MHA and began tendering the original loan payments, the Tumeys were advised that they did not qualify for the modification program, but they could consider a Forbearance Plan or a Repayment Plan. Because this was what the Tumeys had been offering to do, the Tumeys hoped that the matter would be resolved. However, just a day later, on November 9, 2010, the Tumeys were advised

that they are still under consideration for a MHA, but that Chase has not received all the documentation.

14. On November 19, 2010, Larry Thode, Vice President for Chase, acknowledged that it had been advised that the Tumeys had retained counsel and that counsel was authorized to discuss the case. On December 13, 2010, without contacting the Tumeys or the undersigned counsel, and contrary to the representations in the November 8, 2010 correspondence, Thode advised the Tumeys that Chase was justified in assessing attorneys fees and late fees. The justification contained in the correspondence was false; nevertheless, Chase never sought to ascertain the appropriate facts. When the Tumeys and counsel attempted to contact Chase and clarify the misstatements – in light of Chase's representation that its "goal is to provide the highest level of quality service," Chase refused to respond to any telephone calls but instead continued to barrage the Tumeys with contradictory communications. On February 18, 2011, for example, Chase incredibly advised the Tumeys that they may be eligible for the Home Affordable Modification program.

15. In excess of one dozen telephone calls were made to Chase in an attempt to resolve the matter. Those telephone calls were either never returned (despite the telephone message that all calls would be returned in 24 hours) or representatives of Chase would refuse to discuss the matter with Tumey's counsel unless a "Letter of Representation" was provided. Despite the fact that such a letter was provided to Chase on at least two occasions, Chase failed to contact Tumeys' counsel and continued to send unsigned correspondence to the Tumeys, each with a different or contradictory message, or promising to investigate the matter and respond, though only once was any response made – a response fraught with misstatements and an apparent mis-appreciation of

the facts. Efforts on behalf of the Tumeys to contact Chase and advise Chase of its misunderstandings, as with all communications, have gone unheeded.

16. The Tumeys simply wish to address the matter consistent with the offers made by Chase and finally resolve this matter; however, Chase's refusal to deal with the Tumeys, but rather barrage the Tumeys with inconsistent and contradictory unsigned correspondence suggesting that the Tumeys contact a particular number – which calls never are returned – has left the Tumeys completely baffled as to the manner in which this matter can be resolved and suggests either a concerted effort to harass the Tumeys or a colossal display of indifference and incompetence. Despite this, the Tumeys have continued to try and amicably resolve the matter and have continued to make payments as they became due; however, each of those payments has been returned. Furthermore, in reviewing their credit report, the Tumeys recently discovered that Chase has reported their residence as "in foreclosure," though the Tumeys have not been advised of that fact and have been trying to deal with Chase to resolve the litany of contradictory information being provided by Chase. The resulting damage to the Tumeys caused by Chase's bizarre and inane behavior, including damage to their credit rating, continues to mount.

## V. COUNT 1 – FRAUDULENT MISREPRESENTATION

17. Plaintiffs incorporate by reference paragraphs 1 through 16 as if fully set forth herein.

18. The Defendant made the following representations to Plaintiffs:

    I.    Plaintiffs would suffer *no repercussions* from participating in Defendant's Loan Modification Program;

    II.    Plaintiffs were to make payments as directed by Defendant to protect their home;

    III.    Defendant would notify Plaintiffs as to whether they were entitled to a Modified Loan Plan;

    IV.    In September 2010, if Plaintiffs reapplied for the Plan and provided a certified check for the modified amount, Defendant would remove the Property from the foreclosure list;

    V.    Plaintiffs did not qualify for the Plan, but could apply for a Forbearance Plan or a Repayment Plan; and

    VI.    Defendant would speak with Plaintiffs' counsel when it received a "Letter of Representation" from Plaintiffs.

19. These representations were material because each representation influenced Plaintiffs' financial decisions.

20. The material representations made to Plaintiffs by Defendant were all false statements of fact. For instance, Plaintiffs have suffered repercussions from participating in Defendant's Loan Modification Plan, as they have incurred the expense of an attorney to determine what course of action they need to take to resolve the conflict between the parties and their credit rating has been significantly impaired because Defendant notified the credit agencies, but not Plaintiffs, that Plaintiffs' home was "in foreclosure." Additionally, Plaintiffs' home was placed in foreclosure several times by Defendant despite Plaintiffs making the monthly payments as directed by Defendant and complying with Defendant's instructions in September 2010. Furthermore, Defendant did not notify Plaintiffs until late 2010 that they did not qualify for loan modification, when, upon information and belief, Defendant had determined Plaintiffs' status under the Plan relatively soon after Plaintiffs' submitted the required paperwork. Finally, Defendant continued to contact Plaintiffs after receiving multiple "Letters of Representation" from Plaintiffs instructing Defendant to send all correspondence in this matter to Plaintiffs' counsel and after Mr. Thode acknowledged that Defendant had been advised Plaintiffs had retained counsel.

21. Upon information and belief, Defendant made each of these representations knowingly and/or recklessly. Defendant knows the repercussions of participating in its Loan Modification Plan. Additionally, as holder of Plaintiffs' Note, Defendant is responsible for placing the Property in foreclosure, and is the only entity that has control over when the Property is placed in foreclosure. Therefore, Defendant's statement to Plaintiffs directing them to make their monthly payments per Defendant's instructions to protect their home was apparently false when it was made, as Defendant's repeatedly placed Plaintiffs' home in foreclosure. Defendant also told Plaintiffs that it would correspond with their attorney upon receipt of the "Letters of Representation;" however, this too proved to be untrue, and since Defendant is charged with directing its correspondence, it either knew this statement was false or made it with complete reckless disregard for its truth.

22. Upon information and belief, Defendant's purpose in making these representations was to induce Plaintiffs into participating in Defendant's Loan Modification Program, as it is likely more profitable than foreclosing on Plaintiffs' Property. Additionally, Plaintiffs, upon information and belief, believe that Defendant delayed notifying them that they did not qualify for loan modification, so Defendant could collect unnecessary fees and attorney's fees that would not have otherwise been collectable had Plaintiffs not been under the guise of participation in the Plan for well over a year.

23. Plaintiffs relied on Defendant's representations, as they did not pursue other financing options to help save their home and preserve their credit rating because they believed Defendant's representations. Additionally, Plaintiffs did not inquire into their status under the Plan until substantial time had passed, as they relied on Defendant's representation that it would inform them if they qualified for loan modification, which resulted in additional damage to Plaintiffs.

24. Defendant's representations caused Plaintiffs injury. Specifically, Plaintiffs' have suffered substantial damage to their credit score, they have incurred substantial expenses, and their home may currently be "in foreclosure."

## VI. COUNT 2 – VIOLATIONS OF THE TEXAS FINANCE CODE

25. Plaintiffs incorporate by reference paragraphs 1 through 24 as if fully set forth herein.

26. At all times relevant to this Complaint, Defendant has engaged in the business of debt collection in the State of Texas by accepting Plaintiffs' monthly payments on the Note and by attempting to foreclose on Plaintiffs' Property to collect the amount owed on the Note.

27. As stated in Section IV of this Complaint, Plaintiffs purchased the Property as their homestead by executing the Note in the amount of $405,000.00. As a result of the economic downturn, it became substantially harder for Plaintiffs to make payments under the terms of the Note. Upon inquiry, Plaintiffs were put into contact with Defendant, who offered the Plan to Plaintiffs.

28. Defendant, through its representatives, including but not limited to Larry Thode, Vice President of Chase, engaged in unfair debt collection practices in violation of Section 392.001 *et seq.* of the Texas Finance Code. Specifically, Defendant attempted to and continues to attempt to collect incidental charges, fees, and expenses from Plaintiffs that are not authorized by the Note. Additionally, Defendant falsely represented the status and nature of the Plan offered by the Defendant to the Plaintiffs. Moreover, Defendant's representations, as stated in Section V of this Complaint, were false and made for the purpose of collecting on the Note.

29. As a direct result of Defendant's conduct as alleged above, Plaintiffs have suffered substantial injury. Specifically, Plaintiffs have suffered substantial damage to their credit score,

they have incurred substantial expenses, their home may currently be "in foreclosure," and Defendant is claiming that Plaintiffs owe Defendant over $40,000 in fees and expenses in addition to the balance owed on the Note.

## VII. COUNT 3 – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

30. Plaintiffs incorporate by reference paragraphs 1 through 29 as if fully set forth herein.

31. Plaintiffs are consumers under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiffs are individuals who sought and/or acquired modification services from Defendant. Defendant is a corporation that can be sued under the DTPA.

32. Defendant violated the DTPA when Defendant engaged in false, misleading, or deceptive acts or practices that Plaintiffs relied on to their detriment and that violated a "tie-in" consumer statute. Specifically, and as stated above, Defendant violated Section 392.001 *et seq.* of the Texas Finance Code ("Texas Debt Collection Act" or "TDCA").

33. Defendant's wrongful conduct was a producing cause of Plaintiffs' injuries, including, but not limited to, damage to Plaintiffs' credit score, substantial expenses, possible home "foreclosure," and additional fees and expenses Defendant claims it is owed by Plaintiffs.

## VIII. DAMAGES

34. Plaintiffs incorporate by reference paragraphs 1 through 33 as if fully set forth herein.

35. As a proximate cause of Defendant's wrongful actions, Plaintiffs suffered actual damages in an amount to be determined at trial, plus interest thereon.

36. In engaging in the above conduct, Defendant acted wantonly or maliciously with intent to injure Plaintiffs. Alternatively, Defendant acted with conscious indifference to, or reckless disregard of, the consequences of its conduct on Plaintiffs. Accordingly, Plaintiffs are entitled to exemplary damages.

37. Defendant engaged in the above conduct knowingly and/or intentionally. Therefore, Plaintiffs are entitled to treble damages under Texas Business and Commerce Code section 17.50(b).

38. Additionally, Texas Finance Code Section 392.403 provides that the plaintiff in an action under the Texas Debt Collection Practices Act be awarded at least $100 for each statutory violation. Plaintiffs hereby seek damages for each such violation.

39. Furthermore, and as a result of Defendant's conduct, Plaintiffs are entitled to and seek attorney's fees, plus costs and expenses.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendant as to all causes of action as follows:

a. Granting actual damages to Plaintiffs in an amount to be determined at trial, plus interest thereon;

b. Granting exemplary damages to Plaintiffs in an amount to be determined at trial;

c. Granting Plaintiffs treble damages pursuant to the DTPA;

d. Granting Plaintiffs at least $100 for each violation of the Texas Debt Collection Practices Act;

e. Awarding Plaintiffs reasonable and necessary attorney's fees, plus cost and expenses; and

f. Granting such other and further relief as the Court deems just and proper.

PLAINTIFFS' FIRST AMENDED COMPLAINT....................................................................PAGE 11

Respectfully submitted,

**COKINOS, BOSIEN & YOUNG**

BY: /s/ Craig H. Clendenin
GREGORY M. COKINOS
Bar No. 04527250
Federal Bar No. 5073
CRAIG H. CLENDENIN
Bar No. 04375000
Federal Bar No. 2565
Four Houston Center
1221 Lamar, 16th Floor
Houston, Texas 77010
(713) 535-5500
Fax: (713) 535-5533

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served, via ECF, in accordance with the Federal Rules of Civil Procedure on June 20, 2011, as follows:

Wm. Lance Lewis
QUILLING, SELANDER, LOWNDS, WINSLETT
& MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100

/s/ Craig H. Clendenin
CRAIG H. CLENDENIN

F:\WPDOCS\4116001\Pleadings\ags 1st Amended Complaint.wpd

PLAINTIFFS' FIRST AMENDED COMPLAINT...........................................................................PAGE 12